IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-1068

Filed 19 September 2023

Wilson County, No. 21 CRS 204

STATE OF NORTH CAROLINA

v.

JASMIN R. SINGLETARY

Appeal by Defendant from a judgment entered 23 May 2022 by Judge L. Lamont Wiggins in Wilson County Superior Court. Heard in the Court of Appeals 9 August 2023.

*Attorney General Joshua H. Stein, by Assistant Attorney General Kyle Peterson, for the State.*

*Phoebe W. Dee, for the Defendant.*

WOOD, Judge.

Jasmin Singletary ("Defendant") appeals from the trial court's revocation of her probation and activation of a sentence of ten to twenty-one months imprisonment. Defendant was placed on thirty-six months of probation for five counts of obtaining property by false pretenses. Three violation reports were subsequently filed against her for, among other things, committing criminal offenses while on probation. Probation Officer Heather Horne ("Horne"), who testified for the State at Defendant's

probation revocation hearing, had replaced Probation Officer Williams ("Williams"), Defendant's prior probation officer, shortly before the revocation hearing.

First, Defendant argues there was not sufficient evidence before the trial court for it to find Defendant committed a crime while on probation where the State called no witnesses except the new probation officer to testify as to the alleged crimes. Second, Defendant argues the trial court violated her statutory confrontation rights when it proceeded with the probation revocation hearing without Williams and without making an explicit finding of good cause not to allow Defendant to confront her.

After careful review, we conclude there was sufficient evidence before the trial court to find Defendant committed a crime while on probation. We further conclude the trial court did not prejudicially err when it proceeded with the probation revocation hearing without Williams because other competent evidence established Defendant violated probation by committing a new criminal offense.

## I. <u>Background</u>

On 7 November 2019, Jasmin Singletary pleaded guilty to five counts of obtaining property by false pretenses. The trial court entered three judgments. Defendant was sentenced to an active sentence of imprisonment for a minimum of ten months and a maximum of twenty-one months, suspended for thirty-six months of probation. Defendant also was sentenced to a minimum of ten and maximum twenty-one months imprisonment, suspended for thirty-six months of supervised

probation. The probationary sentence included a condition of paying $26,563.00 restitution to the victims of the false pretenses crimes as well as the costs of court, bringing the total cost to $27,415.50. Finally, Defendant was sentenced to another ten to twenty-one months imprisonment, also suspended for thirty-six months and subject to the same terms and conditions applying to the second judgment. The trial court ordered all sentences to run consecutively.

The regular conditions of Defendant's probation, as relevant to this case, also included:

> [D]efendant shall: (1) Commit no criminal offense in any jurisdiction. . . . (6) Not abscond, by willfully avoiding supervision or by willfully making [D]efendant's whereabouts unknown to the supervising probation officer. . . . (8) Report as directed by the Court or the probation officer to the officer at reasonable times and places and in a reasonable manner[.]

After Defendant's release from jail, Defendant was on supervised probation in Wilson County.

On 21 January 2021, a probation officer filed a probation violation report alleging Defendant willfully failed to repay the amount ordered in restitution and court fees and failed to pay supervision fees. At a probation violation hearing held 26 July 2021, Defendant admitted to not having paid any money toward the restitution, court costs, and supervision fees, but she denied the willfulness of her failure to pay. The trial court found Defendant violated probation by her failure to pay restitution, court costs, and supervision fees. The court converted all restitution due except

$5,000.00 to a civil judgment and ordered monthly payments of $50.00, with Defendant returning to court if she missed two or more payments.

Subsequently, three violation reports leading to Defendant's probation revocation hearing and the probation revocation at issue in this case were filed against Defendant: (1) a 1 November 2021 violation report alleging Defendant failed to make two $50.00 payments and committed a criminal offense as Defendant was charged on 1 September 2021 with obtaining property by false pretense and uttering a forged instrument in Johnston County; (2) a 22 December 2021 violation report alleging Defendant absconded by leaving her last known address and failing to make herself available for supervision; and (3) a 28 February 2022 violation report alleging that on 29 February 2022 Defendant was arrested and charged with uttering a forged instrument at the State Employee's Credit Union (SECU) in Wake County and violated her probation by being on the premises of a SECU on 31 August 2021, when the alleged offense was committed.

The probation violation hearing was held 23 May 2022. At the beginning of the probation revocation hearing, Defendant objected to Williams's absence, arguing Defendant had a right to cross-examine adverse witnesses unless the court found good cause for not allowing confrontation. Defendant's counsel relayed her understanding that Williams was "on leave and they did not know when she was coming back." Defendant's counsel explained there was conversation and text messages between Defendant and Williams about which Defendant wished to cross-

examine Williams. The trial court asked for the State's position on the matter, and the State explained Williams was absent due to a death in her family. The trial court then asked if Defendant acknowledged she had been served with a copy of the violation report and was on notice of the allegations contained in the reports. Defendant's counsel acknowledged both points. The court stated, "the objection is noted for the record."

The State called Officer Horne as a witness. Horne had taken over as Defendant's probation officer. Williams was "not technically with the Department" at the time because of a death in her family at the hands of someone who was "criminally charged in a homicide." Horne testified Williams made her aware of Defendant's pending probation violations and asked for her assistance with Defendant's case. Horne further testified that she was familiar with Defendant, her case, and her violations.

Regarding the first violation report, Defendant admitted she had not made the $50.00 payments for two months but denied her willfulness. Through counsel, Defendant stated she since had paid some of it. Defendant admitted to the pending charges of obtaining property by false pretense and uttering a forged instrument but not to any "independent finding behind the charge." Horne testified Defendant cashed a check in the amount of $600.00 drawn on a closed bank account and admitted during a phone conversation with both Horne and Williams that she had cashed the check "to help her friends out." The state submitted two exhibits

pertaining to the Johnston County charges of obtaining property by false pretense and uttering a forged instrument. The State submitted two still images, dated 1 September 2021, from security footage captured inside the SECU showing a woman standing in front of a bank teller's counter. Horne testified the Johnston County Sheriff's Office sent her a copy of the images. The State also submitted a warrant for Defendant's arrest for obtaining property by false pretense and uttering a forged instrument. The warrant accurately stated Defendant's date of birth. It further stated Defendant tried to deposit the check, which was "from a known closed BB&T checking account belonging to the Defendant[,] into a [SECU] account belonging to Dinesha Brice[.]" Horne testified she spoke with a Johnston County detective who stated the photographic evidence confirmed Defendant was at SECU, wrote a check, cashed it, and took funds.

Regarding the second violation report, Horne testified Defendant's last known address was a 406 Englewood Drive, at the time her case was accepted for courtesy supervision in Johnson County. Horne testified Williams went to this address on 3 October 2021, but Defendant was not there. On cross-examination, Defendant's counsel asked Horne if she was aware of a message sent by Defendant to inform Williams that Defendant had obtained a restraining order against her husband with whom she had been living at the Englewood address. Horne stated that while she could not testify as to a text message because she did not have access to Williams's

cell phone, she was aware Defendant was scheduled to appear in court for a domestic violence case in December.

Horne testified Williams did not hear from Defendant until 26 October 2021, when Defendant called Williams and Horne (who were on the phone together) to explain her son had a mental health issue and she was taking him for treatment. Williams and Horne requested medical proof which Defendant did not provide. On 8 November 2021, Williams again went to the Englewood address, but family stated Defendant lived in Clayton. Defendant did not provide notice of her change of address to her probation officer, as required, nor did she make any visits to the probation office. Some time later, Defendant reported an address in Johnston County stating she lived there with her friend. However, when a Johnston County officer visited this address, the resident stated Defendant did not live there but "only came through every once in a while." After further extensive efforts by probation officers to locate Defendant, she turned herself in after absconding probation for a little over a month.

Horne replaced Williams as Defendant's probation officer in February 2022. On 28 February 2022, Horne filed the third probation violation report alleging Defendant committed a new criminal offense. The State submitted two images, provided to Horne by the Garner Police Department, purportedly of Defendant at a SECU drive-through ATM in Garner. The State also submitted a Garner Police Department arrest warrant naming Defendant and stating probable cause to believe she uttered a forged instrument. The warrant stated there was probable cause to

believe Defendant delivered to SECU a forged check in the amount of $300.00 payable to Dinesha Brice by Defendant. The warrant contained Defendant's demographic information, which Horne confirmed.

The State requested the trial court to have Defendant remove the mask she wore at the probation revocation hearing for the trial court to compare Defendant's appearance to the images of the woman in the photos submitted by the State. In response, the trial court stated:

> For the record, when the State asked the Defendant to remove her mask earlier at the beginning of the proceeding for purposes of identification by the witness, the Court actually reviewed the court file. There was a picture of the Defendant in the court file and the Court has reviewed all the documentation and exhibits that have been presented by the State and finds that the individual in the photographs is indeed the Defendant seated in the courtroom.

After finding it more probable than not Defendant had committed a new criminal offense while on probation, the trial court found Defendant in willful violation of its terms and conditions. The trial court revoked probation and activated the prison sentences. Defendant appealed to this Court pursuant to N.C. Gen. Stat. § 7A-27(b)(1) (2022).

## II. Analysis

The issues before us are: (1) whether there was sufficient evidence before the trial court to find it more probable than not Defendant committed a new criminal offense, and (2) whether the trial court erred by not making a specific finding of good cause to proceed with the probation revocation hearing in Williams's absence.

Defendant argues Horne's testimony, the images captured at SECU locations, and the arrest warrant for alleged new crimes were insufficient evidence for the court to find it more probable than not Defendant committed a new criminal offense during probation. Defendant further argues the trial court violated her statutory right to confront Williams at the probation revocation hearing by proceeding in Williams's absence. We disagree.

## A. Standard of Review

"We review a trial court's decision to revoke probation only for manifest abuse of discretion." *State v. Stephenson*, 213 N.C. App. 621, 624, 713 S.E.2d 170, 173 (2011) (quotation marks omitted). A probation revocation hearing requires evidence "to reasonably satisfy the judge in the exercise of his sound discretion that the defendant has willfully violated a valid condition of probation or that the defendant has violated without lawful excuse a valid condition upon which the sentence was suspended." *State v. Young*, 190 N.C. App. 458, 459, 660 S.E.2d 574, 576 (2008) (quotation marks omitted).

> [O]nce the State has presented competent evidence establishing a defendant's failure to comply with the terms of probation, the burden is on the defendant to demonstrate through competent evidence an inability to comply with the terms. If the trial court is then reasonably satisfied that the defendant has violated a condition upon which a prior sentence was suspended, it may within its sound discretion revoke the probation.

*Stephenson*, 213 N.C. App. at 624, 713 S.E.2d at 173 (citation and quotation marks omitted).

- 9 -

**B. Sufficiency of the Evidence**

Defendant argues Horne's testimony, the still images from SECU security footage purporting to show Defendant committing the check fraud crimes, and the arrest warrants for the alleged crimes were insufficient for the court to find it more probable than not she committed those crimes. Specifically, Defendant argues the State needed to call law enforcement witnesses to present evidence about the investigations relating to the crimes, civilian victim witnesses, or SECU employees who could identify Defendant. Because the trial court specifically based its finding of a probation violation on the commitment of a new crime, we limit our review to that basis.

A trial court may revoke probation for committing a criminal offense while on probation. N.C. Gen Stat. §§ 15A-1343(b)(1), 1344(a) (2022).

> [T]he "mere fact that [a probationer is] charged with certain criminal offenses is insufficient to support a finding that he committed them. However, a defendant need not be convicted of a criminal offense in order for the trial court to find that a defendant violated N.C. Gen. Stat. § 15A-1343(b)(1) by committing a criminal offense."

*State v. Hancock*, 248 N.C. App. 744, 749, 789 S.E.2d 522, 526 (2016) (citation omitted). It is sufficient that the "State . . . introduce evidence from which the trial court can independently find that the defendant committed a new offense." *Id.* at 749–50, 789 S.E.2d at 526. "The sworn violation report constitutes competent evidence sufficient to support the trial court's finding that [the] defendant committed this violation." *Id.* at 750, 789 S.E.2d at 526; *see also State v. High*, 183 N.C. App.

443, 449, 645 S.E.2d 394, 397 ("Defendant's probation officer filed a violation report that specifically stated that defendant absconded—a statement that in itself is competent evidence that he violated his probation by absconding. Defendant's suggestion that a statement in a probation violation report is nothing more than an allegation, like the notation on the arrest warrant, is contrary to established law.").

In *Hancock*, it was sufficient for the trial court to make "an independent determination that defendant committed the three offenses charged . . . by finding that defendant committed the violation alleged in the" violation report. *Hancock*, 248 N.C. App. at 750, 789 S.E.2d at 526. The violation report itself was based on evidence of illegal drug possession found after a warrantless search of the defendant's residence. *Id.* at 750, 789 S.E.2d at 526. "Given the informal nature of a probation revocation proceeding, the trial court was entitled to infer that the discovery of" drugs in the defendant's residence "gave rise to the criminal charges" for illegal drug possession. *Id.* at 750, 789 S.E.2d at 526 (citation omitted).

In the present case, we are satisfied the trial court did not manifestly abuse its discretion in finding it was more probable than not Defendant committed a new criminal offense. The violation reports at issue were based on details provided in the arrest warrants, but not only on the arrest warrants. Horne testified she was on a phone call with Defendant and Williams in which Defendant herself stated she cashed the check to help her friends out. The trial court made detailed oral findings regarding the identity of the person in the images, finding that the person in the

images was Defendant. The trial court was entitled to infer from two arrest warrants issued by two different law enforcement offices in two alleged incidences involving fraudulent checks, two sworn violation reports, and Horne's sworn testimony, that the images of Defendant depicted her committing the crimes alleged. *See Hancock*, 248 N.C. App. at 750, 789 S.E.2d at 526. Thus, the court made an independent finding based on the evidence provided at the probation revocation hearing and did not reach its determination based solely on Defendant's being charged with the crimes. *See id.* at 749–750, 789 S.E.2d at 526. A probation revocation hearing is not a trial, and the State need not present evidence sufficient to convict Defendant nor call as witnesses the investigating officers of the crimes alleged. *See id.* at 749, 789 S.E.2d at 526.

Accordingly, we conclude there was sufficient evidence before the trial court for it to find it more probable than not Defendant committed the new criminal offenses alleged in the probation violation reports.

## C. Confrontation Challenge

Defendant argues the trial court's decision to proceed with the probation revocation hearing in Williams's absence violated Defendant's right to confront adverse witnesses in such hearings provided in N.C. Gen. Stat. § 15A-1345(e). Specifically, Defendant argues there was no evidence Williams was actually unavailable where, although undeniably grieving, she was not ill or otherwise incapacitated, and had not moved or transferred from Wilson County. Most

importantly, Defendant argues the trial court erred in failing to make a specific good cause finding when it merely noted the objection but did not address good cause.

"A proceeding to revoke probation is not a criminal prosecution[.]" *State v. Duncan*, 270 N.C. 241, 245, 154 S.E.2d 53, 57 (1967). Therefore, "a Sixth Amendment right to confrontation in a probation revocation hearing does not exist." *State v. Hemingway*, 278 N.C. App. 538, 548, 863 S.E.2d 279, 286 (2021). Instead, N.C. Gen. Stat. § 15A-1345(e) "is a codification of the probationer's right to due process under the Fourteenth Amendment" and controls the probationer's right to confrontation in a probation revocation hearing. *Jones*, 269 N.C. App. at 444, 838 S.E.2d at 689. Thus, any "constitutional argument, to the extent it sounds in due process, collapses into [a] statutory argument." *Hemingway*, 278 N.C. App. at 548, 863 S.E.2d at 286. N.C. Gen. Stat. § 15A-1345(e) provides, "At the [probation revocation] hearing, evidence against the probationer must be disclosed to him, and the probationer may appear and speak in his own behalf, may present relevant information, and may confront and cross-examine adverse witnesses unless the court finds good cause for not allowing confrontation." N.C. Gen. Stat. § 15A-1345(e) (2022). Accordingly, "while N.C. Gen. Stat. § 15A-1345(e) confers upon a probationer a right to confrontation, it commits to the discretion of the trial court whether 'good cause exists for not allowing confrontation.' " *Jones*, 269 N.C. App. at 444, 838 S.E.2d at 689 (brackets omitted); N.C. Gen. Stat. § 15A-1345(e) (2022).

"The denial of the opportunity to cross-examine an adverse witness does not fit within the limited category of constitutional errors that are deemed prejudicial in every case[.]" *State v. Terry*, 149 N.C. App. 434, 438, 562 S.E.2d 537, 540 (2002) (quotation marks omitted); *see also State v. Lewis*, 361 N.C. 541, 544, 648 S.E.2d 824, 827 (2007) (violation even of Confrontation Clause rights may be harmless error in light of other evidence of defendant's guilt). The issue here, then, is whether the trial court committed prejudicial error by not making an explicit finding that good cause existed for not allowing Defendant to confront Williams.

In *Terry*, this Court held the trial court did not err in failing to require an adverse witness to testify where (1) the adverse witness's testimony would have been merely extraneous evidence in light of other competent evidence presented through the probation officer's testimony and (2) defendant failed to request the professor be subpoenaed. *Id.* at 438, 562 S.E.2d at 539 (evidence that the defendant failed to report to a detention center on its own "was sufficient to satisfy the State's burden of showing that defendant had violated an important condition of her probation" without calling the adverse witness, and "Defendant did not at any stage in the proceedings request that her professor be subpoenaed").

There are limitations on a court's decision not to allow a defendant to confront a witness at a probation revocation hearing as demonstrated in two cases where this court determined the trial court erred by failing to allow the defendant to confront a witness. In *State v. Coltrane*, the defendant appeared before the trial court upon

allegations she violated a condition of her probation requiring her to obtain a job. 307

N.C. 511, 512–13, 299 S.E.2d 199, 200–01 (1983). In this extremely brief hearing, the

prosecuting attorney explained to the court that she heard from the probation officer

the defendant had not found a job. *Id.* at 515, 299 S.E.2d at 202. The trial court

asked the defendant if she had a job, and when the defendant started to explain that

she did not, the trial court immediately interrupted her and activated her sentence.

*Id.* at 515, 299 S.E.2d at 202. On appeal, the *Coltrane* court held the defendant's

rights to "present relevant information" and "confront and cross-examine adverse

witnesses unless the court finds good cause for not allowing confrontation" were

violated when the defendant was not allowed to confront the prosecuting attorney or

the probation officer and where the defendant was not allowed to speak on her own

behalf due to the hearing's extreme brevity. *Id.* at 515–16, 299 S.E.2d at 202; N.C.

Gen Stat. § 15A-1345(e). Because the trial court "interrupted [the] defendant and did

not permit her to offer any explanation of her failure to obtain" a job, there was "no

competent evidence in the record to support the conclusion that [the] defendant

violated the condition of probation willfully or without lawful excuse," and therefore,

the trial court erred in revoking defendant's probation. *Id.* at 516, 299 S.E.2d at 202.

We recognize the statutory mandate under N.C. Gen. Stat. § 15A-1345(e) for a

trial court to find good cause before denying a defendant's request to cross-examine

an absent witness. In the present case, we also must recognize the controlling

authority of *Terry* which held testimony from an absent witness may be merely

extraneous in light of other sufficient evidence supporting the trial court's finding that a defendant violated her probation.

Here, the evidence supporting the trial court's finding that Defendant committed new criminal offenses was such that Williams's testimony merely would have been extraneous in light of the testimony provided by Horne. The trial court had before it arrest warrants, SECU security footage images which the court examined and found were of Defendant, and Horne's independent testimony of Defendant's admission that she cashed a check for her friends. Horne initiated and filed the third probation violation report alleging that on 29 February 2022, Defendant committed a new criminal offense, was arrested and charged with uttering a forged instrument at the SECU in Wake County, and violated the terms of her probation by being on the premises of a SECU on 31 August 2021, when the alleged offense occurred. Furthermore, she provided testimony regarding the new offense and was available for cross-examination during the revocation hearing. The State provided evidence sufficient to support the trial court's finding that Defendant had committed new crimes even without any testimony from Williams. *Terry*, 149 N.C. App. at 438, 562 S.E.2d at 539.

Defendant specifically wished to cross-examine Williams regarding a text or texts sent by Defendant to Williams stating she obtained a restraining order against her husband. First, and most significantly, such testimony would have been relevant to the issue of absconding. The trial court, however, based its revocation of

Defendant's probation on Defendant's having committed new criminal offenses, so even if Defendant had cross-examined Williams regarding the restraining order, it would not have impacted the revocation of her probation. Second, Horne conceded she was aware Defendant was scheduled to appear in court for a domestic violence case in December, allowing Defendant to develop testimony in her favor on the issue of absconding.

Defense counsel even demonstrated an awareness that Williams would be absent, stating her understanding that Williams was on leave for an unknown period of time. Yet Defendant had not subpoenaed Williams. The trial court heard from both Defendant and the State regarding Defendant's objection to Williams's absence, and the trial court noted the objection for the record. The death in Williams's family clearly would have shown good cause to proceed in her absence. The trial court was aware of the reason for Williams's absence and decided to proceed. Because the record demonstrates the trial court's awareness of the circumstances surrounding Williams's absence, we cannot say the trial court abused its discretion by allowing the hearing to proceed in her absence. *See Terry*, 149 N.C. App. at 438, 562 S.E.2d at 539.

Finally, if there were any error, Defendant was not prejudiced where the trial court had before it competent evidence without testimony from or cross-examination of Williams, and Horne, who filed the third probation violation report, testified at the

probation revocation hearing.  *Terry*, 149 N.C. App. at 438, 562 S.E.2d at 540; *see also* *Lewis*, 361 N.C. at 544, 648 S.E.2d at 827.

## III. <u>Conclusion</u>

We hold there was sufficient evidence to support the trial court's finding Defendant committed a new criminal offense based on the arrest warrants, still images of Defendant at two different SECU locations, the sworn violation reports, and Horne's testimony.  We further hold the trial court did not prejudicially err by not making an explicit finding of good cause where sufficient evidence and testimony provided through Horne supported the trial court's finding that Defendant violated her probation, even with Williams absent from the hearing.

NO ERROR.

Judges MURPHY and HAMPSON concur.